**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 92-8501
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MYRON R. BELL,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

( June 4, 1993 )

Before POLITZ, Chief Judge, HIGGINBOTHAM and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Myron Bell appeals his convictions and sentences for aggravated sexual abuse of a child, in violation of 18 U.S.C. § 2241(c), and causing bodily injury to a child, in violation of 18 U.S.C. § 13 and Tex. Penal Code § 22.04(a)(4). Finding no reversible error, we affirm.

## Background

In December 1990, Bell, a soldier stationed at Fort Hood,

Texas, met his future wife, Veronica Jean, a nurse also stationed at Fort Hood. The two married in March 1991, and thereafter lived together in officer housing on the base. The previous October Mrs. Bell had given birth to a baby girl. Immediately following her birth the baby suffered episodes of constipation. From time to time, in response to such episodes, Mrs. Bell used a technique called "digital extraction" to induce a bowel movement. Digital extraction involved insertion of a suppository or small piece of soap just inside the baby's anus, using the small finger. By April 1991, the baby's constipation problem had substantially diminished.

In June 1991 Mrs. Bell was assigned to the evening shift at the base hospital, working from 2:45 p.m. to 11 p.m. When working she usually left her baby at a child care center or with a friend. On June 24, 1991, however, she left the child in her husband's care. Before she left for work that day the baby had a normal bowel movement. The child had no bruises or other abnormal marks on her body.[1] The following morning the baby behaved strangely, struggling and screaming when her mother attempted to move her legs to change her diaper. Mrs. Bell noticed for the first time swelling and bruising on the baby's bottom and thighs and took her to the hospital. Examining physicians concluded that sexual abuse had caused the baby's injuries.

In response to an initial inquiry by authorities Bell denied

---

[1] Bell does not dispute that he had sole custody of the baby during his wife's absence that day, except for a brief period after which he concedes that she had no apparent injuries.

any knowledge of the baby's injuries or their origin. Three days later, in a second interview Bell stated that the baby's injuries resulted from an attempt at digital extraction in response to an episode of constipation. At the time of his arrest in March 1992, Bell added to this explanation the inadvertent placement of keys and a metal barbell pin on the baby's car seat while the infant was in his custody.

The grand jury indicted Bell for aggravated sexual abuse of a child under 18 U.S.C. § 2241(c) and intentionally causing bodily injury to a child under 18 U.S.C. § 13 and Tex. Penal Code § 22.04(a)(4). Bell unsuccessfully moved for judgment of acquittal after the government's case-in-chief and again at the close of evidence. The jury found Bell guilty on both counts, and the trial court sentenced him to concurrent 120- and 135-month terms of imprisonment, concurrent five-year supervised release terms, and the statutory assessments. Bell timely appealed.


## Analysis

Bell initially challenges the government's proof that the offense in this case occurred within the "special maritime and territorial jurisdiction of the United States," as required by 18 U.S.C. §§ 13, 2241(c).[2] While this jurisdictional element is

---

[2] Congress has defined this jurisdiction as including "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building." 18 U.S.C. § 7(3).

essential in prosecutions under section 13 and section 2241(c),[3] the government need prove it only by a preponderance of the evidence.[4]  Bell concedes that any offense in the instant case took place within the boundaries of Fort Hood, but argues that the federal government does not exercise "exclusive or concurrent jurisdiction," as required by 18 U.S.C. § 7(3), over all property on every military base.  Thus, Bell asserts that the government had to demonstrate its special jurisdiction over the housing complex in which this crime took place.[5]  We, however, have repeatedly recognized crimes committed within the confines of federal military reservations as falling within the special territorial jurisdiction of the United States.[6]  This assignment is devoid of merit.

---

[3]  **United States v. Benson**, 495 F.2d 475 (5th Cir.), <u>cert</u>. <u>denied</u>, 419 U.S. 1035 (1974).

[4]  **United States v. Bowers**, 660 F.2d 527 (5th Cir. Unit B Sept. 1981).

[5]  Bell claims that because they testified only to knowledge gained from third persons and maps of untested accuracy, the two witnesses presented by the government on this issue could not give competent testimony regarding jurisdiction.  In this connection, Bell suggests that the government's failure to produce maps or other documentation in response to a general motion for discovery and inspection prevented him from properly investigating the jurisdictional issue.

[6]  **United States v. Colon-Padilla**, 770 F.2d 1328 (5th Cir. 1985) (<u>citing</u> **United States v. McDonald**, 456 U.S. 1 (1982); **United States v. McRae**, 593 F.2d 700 (5t Cir.), <u>cert</u>. <u>denied</u>, 444 U.S. 862 (1979)); **Bowers**; **Benson** (district court could have taken judicial notice that crime committed on military base fell within special territorial jurisdiction of United States).

4

Bell next challenges the sufficiency of the evidence supporting his convictions. Mindful that weight and credibility assessments lie within the exclusive province of the jury,[7] in considering this claim we must view the evidence and draw all reasonable inferences most favorable to the verdict.[8] If the evidence so viewed would permit a rational jury to find all elements of the crime beyond a reasonable doubt, we must affirm the conviction.[9] The evidence need not exclude all hypotheses of innocence.[10] In order to convict Bell under 18 U.S.C. § 2241(c), the government had to prove that he knowingly engaged in a sexual act[11] with a person who had not yet attained the age of 12 years. Under 18 U.S.C. § 13 and Tex. Penal Code § 22.04(a)(4), the government must demonstrate that the defendant "intentionally, knowingly, recklessly, or with criminal negligence . . . cause[d] to a [person 14 years of age or younger] . . . bodily injury."

The two physicians who examined the infant on June 25, 1991 testified that her injuries could have resulted only from sexual

---

[7] **United States v. Garner**, 581 F.2d 481 (5th Cir. 1978).

[8] **Glasser v. United States**, 315 U.S. 60 (1942).

[9] **Jackson v. Virginia**, 443 U.S. 307 (1979).

[10] E.g., **United States v. Heath**, 970 F.2d 1397 (5th Cir. 1992) cert. denied, 113 S.Ct. 1643 (1993).

[11] 18 U.S.C. § 2245(2) defines the term "sexual act" for the purposes of this case.

abuse.[12]  Other government evidence corroborated that testimony.[13]
Although Bell presented expert testimony that the baby's injuries
could have resulted from causes other than sexual abuse, including
an unskilled attempt at digital extraction, and testified to such
an event, the jury was entitled to discredit that evidence.  The
record amply supports inferences that Bell sexually abused and
intentionally caused bodily injury to the baby.  The evidence
sufficiently supports the verdicts.

Bell finally claims that the district court erroneously
sentenced him under U.S.S.G. § 2A2.2 on the bodily injury count.
In applying section 2A2.2, the district court relied on a finding
that Bell injured his victim with intent to commit another felony

---

[12]    Bell suggests that due to inconsistencies regarding the
positioning and direction of bruises on the baby's body, testimony
by the government's expert witnesses cannot support a conviction.
We disagree.  Minor divergence between the testimony of Dr. Hines
and that of Dr. Noel, while it might have affected the weight
accorded by the jury to the government's case, did not render their
statements "facially insubstantial or incredible" so as to fall
short of constitutional sufficiency requirements.  See **United
States v. Greenwood**, 974 F.2d 1449, 1458 (5th Cir. 1992) cert.
denied, 1993 WL 38583 (U.S. May 17, 1993).

[13]    We note, among other things, testimony that when Veronica
Bell indicated intent to change the baby after her June 24 shift,
Bell, in contrast to his usual aversion to changing diapers,
indicated that he already had done so.  Testimony also reflected
that he voluntarily did so again on the morning of June 25, just
before Mrs. Bell discovered the baby's injuries.  We further note
the contrast between testimony that Bell found the digital
extraction technique disgusting, refusing even to watch his wife
perform it, and his later claim that the baby's injuries resulted
from his attempt at the procedure.  Finally, inconsistent
statements which Bell made to investigating authorities regarding
the source of the baby's injuries supports the inference of guilt.

-- the sexual assault.[14]  Relying on his claim that insufficient evidence supported the aggravated sexual assault conviction, Bell asserts that the district court should have sentenced him under U.S.S.G. § 2A2.3 on the second count.  Because we find Bell's conviction under 18 U.S.C. § 2241(c) fully supported by the record, this assignment of error necessarily founders.

The convictions and sentences are AFFIRMED.

---

[14]    See U.S.S.G. § 2A2.2, cmt. 1 (guideline applicable to assault involving intent to commit another felony).