## UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

––––––––––––––––

No. 01-60151

(Summary Calendar)

––––––––––––––––

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BRANDON LOKIETH PERRIEN,

Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi

December 3, 2001

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Brandon Perrien appeals his conviction on two counts of violating 18 U.S.C. § 113(a), which criminalizes assaults "within the special maritime and territorial jurisdiction of the United States." The victims were Perrien's twin three-month old daughters. Perrien challenges the sufficiency of the evidence that the assaults occurred within the special maritime and territorial jurisdiction of the United States, the sufficiency of the evidence that he committed the assaults, and the allowance of

a two-level sentencing enhancement for "more than minimal planning."

On the day the assaults were discovered, Brandon Perrien ("Perrien") remained at home with his daughters while his wife, Christina Perrien, who serves in the Air Force, worked. The couple lived in base housing on Keesler Air Force Base, in Biloxi, Mississippi. When Mrs. Perrien returned home from work, she noticed that one of her daughters, Cai'Lah, did not move her left arm. When Mrs. Perrien tried to move Cai'Lah's arm, the child began to scream. Mrs. Perrien took Cai'Lah to the hospital, where the examining physician discovered that the child's upper left arm had been fractured. Cai'Lah was so young at the time that she lacked the motor skills to injure herself accidentally. The doctor concluded that someone broke Cai'Lah's arm. An x-ray revealed evidence of earlier rib fractures, and the doctor became concerned that the child had been abused. Mrs. Perrien retrieved her other daughter, Ai'Jah, and brought her to the hospital. Subsequent examination of the children revealed, in each child, between 10 and 20 fractures that occurred on at least two separate occasions. Several of the fractures were of a type that rarely occurs in the absence of child abuse.

Agents from the Air Force's Office of Special Investigations went to the Perrien home, where they found holes in the walls, broken furniture, and other indications of abusive behavior. The agents then interviewed Perrien and began an investigation.

During the course of the investigation, Perrien gave two sworn statements in which he admitted behavior toward the children that could have caused their injuries. Mr. and Mrs. Perrien kept car seats and automatic swings in their living room which the children used to play. In his first statement, Perrien explained that the injury to Cai'Lah's left arm occurred when using one of the car seats in the living room. "I picked up Cai'Lah from the car seat that was on the floor in the living room," he explained, "and her left arm got caught in between the handle and the seat. Cai'Lah's arm

bent back as I picked her up. Cai'Lah screamed and began to cry." Perrien explained that the children's rib fractures could have occurred when the children were sleeping in the same bed as Mrs. Perrien and him, because on two occasions he accidentally rolled over the twins.

In a subsequent interview with investigators, Perrien admitted:

On about 10 separate occasions while taking care of the kids . . . the stress became overwhelming and I snapped. When this occurred I handled the kids rougher than normal but still not with the intent of causing them any injuries. I realized after some of the incidents that I did injure the kids . . . . When I say that handled them rough I mean I would pull them out of the swing. If there [*sic*] legs were caught I would just pull until it came loose. I would also squeeze their stomach [*sic*]. The primary reason I did this was because the kids were sometimes constipated and had gas. I was expiramenting [*sic*] whether or not this technique would work.

The prosecution called Dr. Kent Hymel, an expert on child abuse and forensic pediatrics. Dr. Hymel testified that pulling the children from the car seats or swings in the way described by Perrien in his statements could have caused the arm injuries in the twins, if the force used in pulling them from the seats was sufficiently great. He further testified that it was unlikely that rolling over the twins would have fractured their ribs, but very forcefully squeezing the infants' stomachs could have caused the rib fractures. The jury found Perrien guilty of two counts of assault within the special maritime and territorial jurisdiction of the United States.

The parties disagree as to the government's burden of proof on whether the assaults occurred "within the special maritime and territorial jurisdiction of the United States."[1] The United States

---

[1]An existing Fifth Circuit case, *United States v. Bell*, 993 F.2d 427 (5th Cir. 1993), holds that the preponderance of the evidence standard applies to the jurisdictional elements in two statutes, the Assimilative Crimes Act, 18 U.S.C. § 13, and the federal aggravated sexual abuse statute, 18 U.S.C. § 2241(c). Both statutes, like 18 U.S.C. § 113(a), require that the offenses occur "within the special maritime and territorial jurisdiction of the United States."
We question our holding in *Bell*. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court recently reaffirmed the rule that any element included in the offense-defining part of a criminal statute must be proved beyond a reasonable doubt. *Id.* at 476 ("[the Due Process Clause

asserts that the relevant burden is the "preponderance of the evidence." The defense assumes, and the district court instructed the jury, that the relevant burden is "beyond a reasonable doubt."

We need not resolve this issue, because we find that the government's evidence on situs was sufficient to support a guilty verdict even if the higher reasonable doubt standard applies. In reviewing the sufficiency of the evidence, we must "determine whether a reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt." *E.g.*, *United States v. Reveles*, 190 F.3d 678, 686 (5th Cir. 1999); *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). We draw all inferences that may be drawn from the evidence in the light most favorable to the verdict. *Id.* The evidence does not need to exclude every reasonable hypothesis of innocence; the jury is free to choose among reasonable interpretations of the evidence. *Reveles*, 190 F.3d at 686; *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996). We reverse, however, if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence." *Id.*

Here, there was sufficient evidence for the jury to find beyond a reasonable doubt that the assaults were committed within the special jurisdiction. Perrien gave two statements in which he

and Sixth Amendment right to a jury trial] indisputably entitle a criminal defendant to a 'jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt'" (internal citations omitted)); *accord, e.g.*, *In re Winship*, 397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *United States v. Gaudin*, 515 U.S. 506 (1995); *Patterson v. New York*, 432 U.S. 197, 209 - 10 (1977) ("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which Perrien is charged." (emphasis supplied)); *Mullaney v. Wilbur*, 421 U.S. 684 (1975).

Here, the requirement that the assault be committed "within the special maritime and territorial jurisdiction of the United States" is unambiguously included in the offense-defining part of the statute. We therefore doubt that a mere preponderance of the evidence on this element could suffice to support a guilty verdict.

admitted using the car seats and the swings in the couple's living room in ways that could have caused injuries to the children. Perrien concedes, and the evidence at trial established, that the couple's home (including their living room) was within the special jurisdiction. Moreover, Mrs. Perrien took the family's car to work with her on the day Cai'Lah's arm was fractured. Although Perrien could have taken the children out of the home in a stroller, he would not have had occasion to use a car seat except in the living room. And Dr. Hymel, the government's expert, testified that the kind of stomach compressions needed to fracture the childrens' ribs, if "witnessed by a disinterested third party would have been clearly perceived to have been highly dangerous, very likely injurious." The jury could reasonably have inferred from this statement that Perrien would have had a hard time carrying out the stomach compressions outside the privacy of the home. On this evidence, the jury was justified in finding that the assaults occurred within the special jurisdiction.

Perrien also challenges the sufficiency of the evidence as to whether he (as opposed to someone else, presumably Mrs. Perrien) committed the assaults. None of Perrien's motions at trial raised this issue: they addressed only the sufficiency of the evidence of the location of the crime. It is therefore unclear whether his argument on this point has been properly preserved for appeal. Assuming arguendo that the issue is properly preserved, the jury had sufficient evidence to support a guilty verdict. Perrien, as the sole caretaker of the twins while Mrs. Perrien was at work, had ample opportunity to commit the assaults. Perrien gave two statements that the jury could have viewed as incriminating, including a statement that he "snapped" on several occasions and treated the kids roughly. The medical evidence corroborated that some of his self-described "rough" handling could have caused the observed injuries in the children. This is sufficient evidence to support a guilty verdict.

The final issue is whether the district court properly allowed a two-level sentencing enhancement for "more than minimal planning." U.S.S.G. § 2A2.2(b)(1). "More than minimal planning" includes, among other things, taking "significant affirmative steps . . . to conceal the offense." *Id.* Whether Perrien engaged in more than minimal planning is a fact question that we review for clear error. *E.g.*, *United States v. Calbat*, 266 F.3d 358 (5th Cir. 2001); *United States v. Lage*, 183 F.3d 374, 384 (5th Cir. 1999), *cert. denied*, 528 U.S. 1163 (2000).

Here, Perrien acknowledged injuring the children and then not taking them to a doctor. He told his wife that he did not know what was wrong with Cai'Lah's arm, but later admitted to investigators that he had injured her when removing her from a car seat. It does not seem to be "clear error" for the district court to conclude on these facts that Perrien had engaged in "significant affirmative steps" to conceal his offense.

We therefore AFFIRM the convictions and sentence.