**UNITED STATES of America**

**v.**

**Brett Alden BETHURUM.**

**No. 4:02–CR–061–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

July 31, 2002.

Richard Roper, United States Attorney's Office, Fort Worth, TX, for plaintiff.

Lawrence Brown, Brown & Gonzalez, Fort Worth, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Before the court for decision is the motion of defendant, BRETT ALDEN BETHURUM, for judgment of acquittal. After having considered the motion, the government's response, the record, and pertinent legal authorities, the court has concluded that the motion should be granted to the extent that it reurges the motion for judgment of acquittal that defendant made when the government rested.

### I.

#### Background

The eight-count indictment in this case charges defendant with eight violations of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Title 18 U.S.C. § 922(g)(9) provides that:

(g) It shall be unlawful for any person—

. . . . .

(9) who has been convicted in any court of a misdemeanor crime of domestic violence,

to . . . possess in or affecting commerce, any firearm. . . .

The term "misdemeanor crime of domestic violence," as used in § 922(g)(9), is

defined in 18 U.S.C. § 921(a)(33) as follows:

(33)(A) ... [T]he term "misdemeanor crime of domestic violence" means an offense that—

(i) is a misdemeanor under Federal or State law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

(B)(i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, *unless* —

(I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and

(II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either

(aa) the case was tried by a jury, or

(bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

(emphasis added). Part (ii) of subparagraph (B) of paragraph (33) creates an exception to the definition, which is not applicable here, that reads:

(ii) A person shall not be considered to have been convicted of such an offense for purposes of this chapter *if* the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

(emphasis added).

Title 18 U.S.C. § 924(a)(2) provides, *inter alia,* that "[w]hoever knowingly violates subsection ... (g) ... of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

The indictment charges as to each of the eight counts that on a specified date defendant committed the offense by knowingly and unlawfully possessing a specifically described firearm in and affecting interstate commerce when he was "a person who [had] been convicted in a court of the State of Texas of misdemeanor crime of domestic violence." The defendant pleaded not guilty to each count of the indictment.

The trial commenced the morning of June 17, 2002. The evidence presented by the government as its case in chief consisted of:

A. The following exhibits:

1. A charge filed by the district attorney of Tarrant County, Texas, against defendant on April 12, 1997, charging that "on or about the 11th day of April 1997 [defendant] did intentionally or knowingly cause bodily injury to Rebecca Bethurum, a family member of the defendant, by kicking her with his foot." Gov't Ex. 1.

2. A deferred adjudication order showing that on June 9, 1997, in County Criminal Court Number Six, Tarrant County, Texas, defendant entered a plea of guilty before the Honorable R.J. Adcock, Judge Presiding, to the offense charged against him, that the court found that the evidence substantiated the defendant's guilt, and

that "the best interest of society and of the Defendant would be served by deferring proceedings without entering an adjudication of guilt and placing the Defendant on Community Supervision." Gov't Ex. 2.

3. The docket sheet in the state court case against defendant, showing that on June 9, 1997, he pleaded guilty and was "Placed On 24 Months Deferred Adjudication." Gov't Ex. 3.

4. A document defendant signed June 9, 1997, bearing the title "Waiver of Appointment of Attorney and Waiver of Jury Trial by Defendant Entering Plea of Guilty," the text of which immediately above defendant's signature is as follows:

Now comes the undersigned Defendant in this cause and represents to the Court that I have no attorney, that I do not intend to. employ counsel herein, and that I waive any right I may have to have the Court appoint an attorney to defend me in this cause.

I acknowledge that I have been advised by the Court of my right to representation by counsel in the trial of the charge pending against me. I have been further advised that if I am unable [sic] to afford counsel, one will be appointed for me free of charge. Understanding my right to have counsel appointed for free of charge if I am not financially able to employ counsel, I wish to waive that [sic] right [sic] and request the Court to proceed with my case without an attorney being appointed for me. I hereby waive my right to counsel.

I further represent to the Court that I desire to make immediate disposition of this case by here and now entering my plea of guilty, waiving trial by jury and submitting it to the Court on all. issues of law and fact.

WHEREFORE, premises considered, Defendant prays the Court to proceed immediately to arraign me in this cause, accept my plea of guilty and waiver of jury trial, to enter judgment thereon and, having entered the same, to immediately sentence me in the manner provided by law, waiving for said purpose every provision of the law the effect of which would delay of [sic] arrest entry of judgment or imposition of sentence.

Gov't Ex. 4. The document shows that it was approved by Judge Adcock on the date it was signed.

5. A document titled "Waiver of Jury Trial and Waiver of Ten Days to Prepare for Trial," which shows that it was signed by defendant on June 9, 1997, the text of which reads as follows:

COMES NOW THE DEFENDANT BRETT ALDEN BETHURUM JOINED BY HIS ATTORNEY IN THE ABOVE STYLED AND NUMBERED CAUSE AND WAIVES THE TEN (10) DAYS ALLOWED HIM TO PREPARE FOR TRIAL AND HERE AND NOW ENTERS HIS ANNOUNCEMENT OF READY. SAID DEFENDANT, HIS ATTORNEY AND THE STATE'S ATTORNEY ALSO IN OPEN COURT WAIVES THE RIGHT TO A TRIAL BY JURY. DEFENDANT WAIVES PRESENTENCE REPORT.

Gov't Ex. 5. While this document says that defendant is "joined by his attorney," it and the other exhibits make clear that defendant was not represented by an attorney, but represented himself in the state court proceeding.

B. A stipulation reached between defendant and the government as to certain elements of the offenses charged against defendant, which was read to the jury. The parties agreed and stipulated to the following facts:

a. That on or about the dates set forth in counts one through eight of the indictment the defendant [sic], prior to time of the offenses as alleged in

the indictment, the defendant, BRETT ALDEN BETHURUM, knowingly possessed the firearms alleged in counts one through eight respectively;

b. That prior to time of the offenses as alleged in counts one through eight of the indictment, the firearms listed in counts one through eight of the indictment, [sic] had traveled at some time from one state to another thereby affecting interstate commerce;

c. That the defendant, BRETT ALDEN BETHURUM, is the same BRETT ALDEN BETHURUM who is named in Government's Exhibits 1 through 5; and

d. That on February 12, 1999, defendant, BRETT ALDEN BETHURUM, was adjudicated guilty of the offense as stated in Government's Exhibits one through five.

Stipulation filed 6/17/2002.

C. Judge Adcock's testimony. He did not recall defendant's state court case. He explained the exhibits, and described the procedures he normally follows when a defendant who does not have an attorney appears before him with the intent to plead guilty. He was not aware at the time of defendant's state court appearance of the existence of the offense with which defendant is charged in the instant case. Judge Adcock described a part of the steps he customarily took in explaining to a defendant the risk involved in proceeding without the benefit of an attorney as follows:

At that time I would give them illustrations that it could hurt them in the future. I would point out that if you were convicted of shoplifting, that's a misdemeanor involving moral turpitude and you could lose your right to vote, that a DWI would raise your insurance rates considerably. I don't believe I ever pointed out this particular offense, because at that time I didn't know it. Tr. at 96. Judge Adcock then responded to a question posed by the court:

THE COURT: If you had known in this particular case, for example, the defendant operating a gun shop would not be able to conduct his business if he pleaded guilty to this domestic offense, would you have warned him of that fact?

THE WITNESS: I doubt it.

*Id.* at 97.

D. The testimony of a former assistant district attorney of Tarrant County, Texas, Reed O'Connor, concerning the practices that were followed when he was in the district attorney's office in dealing with an unrepresented defendant who wished to plead guilty.

\*    \*    \*    \*    \*    \*

When the government rested, defendant, through counsel, made the following oral motion for a judgment of acquittal:

MR. BROWN: Thank you, Your Honor. We'd make a motion at this point for a judgment of acquittal under Rule 29. I'd urge the Court that the evidence is simply insufficient on the element of whether or not Mr. Bethurum is a prohibited person in that he did not knowingly and intelligently waive his right to jury trial or his right to be represented.

We don't have a transcript of the proceeding. Judge Adcock does not have a specific recollection of his exchange with Mr. Bethurum. The one thing he does recall is that he didn't know anything about this federal law, so therefore he surely didn't advise with regard to the possibility of Mr. Bethurum losing his right to operate his family business and his right to possess arms.

The jury could make no other decision but that Mr. Bethurum is not guilty and for that reason we move under Rule 29. *Id.* at 117. After hearing and considering argument of counsel, the court deferred

ruling on the motion, saying: "Well, I'm going to let it go forward. I have some question as to whether I should. And we can look at it again later." *Id.* at 121.

Thereafter, defense counsel put defendant on the stand as a witness. Defendant then rested. The government then called as a rebuttal witness Celia Tijernia, a field inspector for the Bureau of Alcohol, Tobacco and Firearms. The court is not providing the details of the testimony given by defendant and Ms. Tijernia because their testimony is not relevant to the ruling the court is making in this order. Suffice to say here that evidence was received after the government rested (that defendant had worked in a family-owned gun business for about twenty-five years and that his business periodically received publications from the government pertinent to laws governing persons entitled to possess firearms) from which, one might contend, the jury could infer that defendant knew he was at risk of losing his right to possess a firearm when in June 1997 he waived his right to counsel in the state court case and, by entering a plea of guilty, his right to have that case tried by a jury.

After the evidence was closed, defendant, through counsel, made another Rule 29(a) motion for judgment of acquittal "for the reasons stated earlier." *Id.* at 151. After hearing from counsel for the government, the court denied the motion. *Id.* at 151–52. Thereafter, counsel made closing arguments, the jury was given instructions by the court, and, following deliberation, on June 17, 2002, the jury returned a verdict of guilty as to each count of the indictment.

## II.

### *Defendant's Post–Verdict Rule 29 Motion, and the Government's Response Thereto*

In response to a timely filed motion for extension, the court granted defendant an extension to June 28, 2002, for the filing of his motion for judgment of acquittal. The motion was filed June 27, 2002. It has alternative requests. First, defendant requests the court to decide now in his favor the Rule 29(a) motion he made at the conclusion of the government's case in chief. Mot. at 12. In the alternative, defendant urges the court to grant the Rule 29(a) motion he made at the conclusion of the evidence. *Id.* And, finally, he moves the court to set aside the jury's verdict and enter a judgment of acquittal. *Id.*

As to the first of the alternatives, defendant argues that when the government rested, at which time defendant made his first Rule 29(a) motion, there was no evidence that defendant had worked in his family's gun business, *i.e.*, there was no evidence from which the jury could infer that defendant had knowledge that a disposition adverse to him of the state court domestic violence case would have the effect of depriving him in the future of his right to possess a firearm. Defendant acknowledges that in his counsel's opening statement his counsel had made reference to defendant's employment in his family gun shop; but, defendant argues, "the jury would necessarily be required to consider only evidence properly admitted, and not comments made by counsel for the parties in opening ... statements." Mot. at 10–11.

Defendant maintains that, therefore, when the government rested there was no evidence that defendant "knowingly and intelligently waived the right to counsel in the [state court] case," 18 U.S.C. § 921(a)(33)(B)(i)(I), or that he "knowingly and intelligently waived the right to have the case tried by a jury, by a guilty plea or otherwise," 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb). The court is not describing the arguments made by defendant in support of the other alternatives

because they are not relevant to the ruling of the court.

The government's response to the motion proceeds on the incorrect assumption that the court denied the Rule 29(a) motion defendant made when the government rested. Resp. at 3. As a result, the government does not focus on the status of the record at that time. However, coincidentally bearing on the merit of the first Rule 29(a) motion are the government's arguments that the waiver of counsel and right to jury trial issues are legal issues to be resolved by the court, and that they must be resolved against defendant. Also, the government maintains that its trial exhibits and the testimony of Judge Adcock and Mr. O'Connor would support a finding beyond a reasonable doubt that defendant intelligently and knowingly waived his right to counsel. The government does not direct its attention to defendant's argument that there was no evidence when he first moved under Rule 29(a) that he knowingly and intelligently waived the right to have the state court case tried by a jury.

### III.

#### Rule 29(a) and Case Law On the Controlling Standard

■ Federal Rule of Criminal Procedure 29(a) provides that "[t]he court on motion of a defendant ... shall order the entry of judgment of acquittal of one or more offenses charged in the indictment ... after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." The (b) part of the rule provides:

> (b) RESERVATION OF DECISION ON MOTION. The court may reserve decision on a motion for judgment of acquittal, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. *If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.*

(emphasis added).

Thus, if the court reserves ruling on a Rule 29(a) motion made by a defendant when the government rests, the defendant does not run the risk that a motion that was meritorious at that time will later be subject to denial because as part of the defendant's case he adduced evidence in support of the government's case. *See* FED.R.CRIM.P. 29, advisory committee's notes, 1994 amendments.

The rule of the Fifth Circuit is that in reviewing the sufficiency of the evidence the court must determine whether a reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt. *United States v. Perrien,* 274 F.3d 936, 939 (5th Cir.2001). If the evidence did not meet that standard of sufficiency when the government rested, the Rule 29(a) motion defendant made at that time was meritorious, and should now be granted.

### IV.

#### Analysis

■ At the outset, the court must resolve the question of whether the "knowingly and intelligently" waiver issues are factors the government had to prove to the satisfaction of the jury beyond a reasonable doubt to obtain a conviction or, as the government contends, the defendant had the burden of proof, and those issues are legal ones to be decided by the court. The court has concluded that the waiver issues are factors the government was obligated

to establish, and that for the defendant to be convicted there would have to be sufficient evidence for a reasonable jury to find the existence of those factors beyond a reasonable doubt. And, the court has concluded that there was no such evidence when defendant made his first Rule 29(a) motion.

The government argues, relying on authorities such as *McKelvey v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301 (1922), that the knowing and intelligent waiver factors are exceptions to the § 922(g)(9) offense, and that the defendant had the burden to establish that his conduct came within one of the exceptions. That argument ignores the fact that the separate proviso in this case, § 921(a)(33), is not a mere exception but is an affirmative statement of important elements that constitute the § 922(g)(9) offense. Congress was careful in § 921(a)(33) to define the term of art, "misdemeanor crime of domestic violence," it had used in § 922(g)(9). In doing so, Congress made clear that a conviction of a misdemeanor crime of domestic violence would not exist *unless* the accused was represented in the misdemeanor action by counsel or "knowingly and intelligently waived the right to counsel in the case" *and,* if the accused was entitled to a jury trial in the misdemeanor action,[1] his or her case was either tried to a jury or he or she "knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise."[2]

The use of the word "if" in § 921(a)(33)(B)(ii) might well, and probably does, introduce an exception as to which the defendant would have the burden of proof. In contrast, § 921(a)(33)(B)(i) is a basic part of the definition of the term "misdemeanor crime of domestic violence," and does not merely create an exception that would enable a person otherwise subject to the statute to escape the statute's consequences upon proof of the exception. Section 921(a)(33)(B)(i) is a part of the offense-defining portion of the offense statute—it provides a description of factors that must be found to exist before an accused can be subjected to the offense in the first instance. Therefore, the government had the obligation to adduce evidence as part of its case in chief that would have allowed a reasonable jury to find that the existence of those factors beyond a reasonable doubt. *See United States v. Gaudin,* 515 U.S. 506, 510–13, 522–23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). *See also United States v. Perrien,* 274 F.3d at 939 n. 1.

From the outset, the government has sought to frame the issue in terms of whether defendant's state court misdemeanor conviction was valid. *See* Tr. at 81–82. That is not the issue at all. Indeed, as a general proposition a defendant would not be permitted to challenge the validity of his or her predicate conviction.[3]

[1]. Apparently the parties are in agreement that defendant was entitled to a jury in his misdemeanor state court action.

[2]. If, as the government maintains, the use of the word "unless" in 921(a)(33)(B)(i) creates exceptions on which a defendant has the burden of proof in order to avoid conviction, one could just as reasonably contend that, to avoid a conviction of treason, the accused, if he or she did not confess in open court, would have the burden to prove that testimony could not be provided by two witnesses to the overt act of treason of which he or she was accused. *See* U.S. CONST. ART. III, § 3 ("No Person shall be convicted of Treason *unless* on the Testimony of two Witnesses to the same overt Act, or on the Confession in open Court." (emphasis added)).

[3]. To the extent that Congress considered the validity of the state court conviction to bear on guilt of the offense in question, it included the exception on that subject that is found in § 921(a)(33)(B)(ii).

*See Lewis v. United States,* 445 U.S. 55, 67–68, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). Nor is the court confronted with the legal issue of whether the predicate offense qualifies as such under the laws of the State of Texas, which is the issue the Fifth Circuit confronted in *United States v. Daugherty,* 264 F.3d 513, 514 (5th Cir. 2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1113, 151 L.Ed.2d 1007 (2002). State law does not enter the picture here. Rather, the question is whether, without regard to the validity, *vel non,* of the misdemeanor conviction, there was sufficient evidence of the elements of the offense set forth in § 921(a)(33)(B)(i) to withstand a Rule 29(a) motion made when the government rested. Validity of the state court conviction could well become an issue if a defendant were to urge the exception contemplated by § 921(a)(33)(B)(ii). In contrast, a person can have a perfectly valid misdemeanor conviction but not be guilty of the offense in question because of the government's failure to prove beyond a reasonable doubt that the defendant waived counsel and trial by jury by the standards Congress fixed by § 921(a)(33)(B)(i).

The government seeks comfort in the amended opinion of the Ninth Circuit in *United States v. Akins* in which the court made the following puzzling statements in a case involving a conviction under § 922(g)(9):

> Under the terms of the statute, then, an indictment under § 922(g)(9) cannot

stand if the defendant was not represented by counsel and did not knowingly and intelligently waive the right to counsel in the predicate misdemeanor. *Cf. United States v. Swanson,* 947 F.2d 914, 919 (11th Cir.1991) (dismissing an indictment based on the court's finding that restoration of the defendant's civil rights placed him within 18 U.S.C. § 921(a)(20)'s expungement exception). Because § 921(a)(33)(B)(i)(I) is a legal definition, its application presents a question of law to be decided by the trial judge. *See United States v. Bartelho,* 71 F.3d 436, 440 (1st Cir.1995) (holding that the applicability of § 921(a)(20)'s expungement exception is a question of law to be decided by the judge); *United States v. Flower,* 29 F.3d 530, 535 (10th Cir.1994) (same).

276 F.3d 1141, 1146 (9th Cir.2002). The Ninth Circuit mixes apples with oranges (an expungement exception with a legal definition of the offense) to reach its amazing conclusion that "[b]ecause § 921(a)(33)(B)(i)(I) is a legal definition, its application presents a question of law to be decided by the trial judge." *Id.*[4] The Ninth Circuit had it right the first time when it said in its original opinion that:

> By defining the federal offense to require a knowing and intelligent waiver of the right to counsel in the underlying domestic violence conviction, Congress made knowing and intelligent waiver an

**4.** The court notes with interest that after relying on *United States v. Bartelho,* 71 F.3d 436, 440 (1st Cir.1995), as support for the proposition that § 921(a)(33)(B)(i)(I) is a legal definition presenting a question of law to be decided by the trial judge, the court went on to reverse the trial court's conclusion that the defendant knowingly and intelligently waived his right to counsel in his early assault conviction because "the record in this case does not establish that Akins chose to waive the right to counsel with 'eyes open'...." *United States v. Akins,* 276 F.3d 1141, 1149 (9th Cir.2002).

If the Ninth Circuit had been true to *Bartelho,* it would have concluded, as did the *Bartelho* court, that the defendant had the burden of proof. A problem the Ninth Circuit encountered was understanding that § 921(a)(33)(B)(i)(I) presents fact issues that necessarily would have to be resolved by a jury in a criminal case, whereas, on the other hand, the expungement issue normally would not present a question of fact and normally would be a legal question to be decided by the judge.

element of the § 922(g)(9) offense. The government thus has the burden of proving beyond a reasonable doubt a knowing and intelligent waiver of the right to counsel in the predicate offense. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). *United States v. Akins*, 243 F.3d 1199, 1202 (9th Cir.2001), *amended and superseded on denial of reh'g by United States v. Akins*, 276 F.3d 1141 (9th Cir.2002). Also, the Ninth Circuit was correct when it said that when evaluating whether a waiver is valid a court should adopt every reasonable presumption against waiver. *Id.* at 1203.

▮ This court disagrees with the government's contention that defendant could knowingly and intelligently waive his right to counsel and his right to have his state court case tried by a jury (by entering a plea of guilty), within the contemplation of § 921(a)(33)(B)(i), without knowing that a consequence of his waivers could be the deprivation of his right in the future to possess a firearm. The Fifth Circuit has held that the Second Amendment "protects the rights of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms...." *United States v. Emerson*, 270 F.3d 203, 260 (5th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2362, 153 L.Ed.2d 184 (2002). When Congress made the knowing and intelli-

gent waiver factors a part of the definition of misdemeanor crime of domestic violence, it undoubtedly had in mind that one of the things that would have to be known to the accused for the waiver factors to exist would be that thereafter his or her possession of a firearm would subject him or her to a felony offense if a misdemeanor conviction were to follow from the waivers. Congress presumably recognized that the offense it created by § 922(g)(9) was a particularly onerous one for a person convicted of a misdemeanor in connection with a domestic altercation. It is common knowledge that accusations of domestic abuse often are lightly made, with skimpy or no substantive basis, during the give and take of divorce litigation and other forms of spousal, or domestic partner, disputes, such as child custody proceedings.[5] And, it is common knowledge that spouses or domestic partners, without giving significant consideration to the consequences of doing so, often cave in with a plea of guilty to those sorts of domestic relations accusations rather than to devote the time and resources to a defense of the charges.

Apropos here is language the Fifth Circuit used in *Molignaro v. Smith:*

It may be argued that the mere under-estimate of possible penalties attaching to a crime will not induce innocent men to waive counsel or confess guilt, and that any mistakes in this respect are therefore nonprejudicial. The decisional development of the anti-sporting concept of justice, however, reflects the fear that innocent men pitted against trained prosecutorial forces may waive counsel and plead guilty to crimes they have not

---

**5.** The level of seriousness with which accusations of domestic violence are taken in the divorce litigation community is reflected by the fact that often the somewhat standard forms used for the bringing of a divorce action include allegations of domestic violence, or threatened domestic violence, as grounds

for divorce, along with the request for injunctive relief to prevent the nonfiling spouse from committing acts of violence against the filing spouse. And, those kinds of injunctions routinely are given by domestic relations courts based on the bare allegations of the filing spouse.

committed, if they think that by doing so they will avoid the publicity of trial, secure a break at the sentencing stage, or simply get the whole thing over with. Defendants who know the stiff penalties involved will be less likely to submit in this fashion.

408 F.2d 795, 801 (5th Cir.1969). Congress must have had in mind the antisporting concept of justice when it put the waiver proof requirements in the definition. Undoubtedly, Congress was particularly concerned that an accused, with legitimate reason to question guilt, in a so-called domestic violence case would later unfairly be subjected to a federal felony offense because of possessing a firearm even though the accused had no knowledge of that risk when he or she earlier waived the right to counsel and trial by jury by pleading guilty to the domestic abuse offense.

The instruction the court gave the jury in the instant action on the knowing and intelligent waiver factors was as follows:

[THE COURT:] You are instructed that before you can find the defendant had been convicted in a court of a misdemeanor crime of violence, as required by the second element already mentioned, you must be convinced that the government has proved, in addition to the facts previously mentioned, each of the following things beyond a reasonable doubt: (a) that when the defendant pleaded guilty in the state court case in question, he knowingly and intelligently waived the right to counsel in such case before he pleaded guilty; and (b) that the defendant knowingly and intelligently waived the right to have such case tried to a jury, by a guilty plea, or otherwise.

Okay. Now, I'm going to define for you what the words "knowingly" and "intelligently" mean in the sense they're used in these instructions.

The words "knowingly and intelligently," as they have just been used, mean that the defendant *knew and understood, before he waived his right to counsel and his right to have his case tried to a jury, all material consequences of his waivers and that he made an intelligent decision to forego his right to counsel and to a jury trial with full knowledge of those consequences.*

In other words, as part of its burden in this case, the government must also prove beyond a reasonable doubt that when the defendant waived his right to counsel and his right to have his case tried to a jury he knew of the consequences of those waivers and made the intelligent decision to make the waivers with full knowledge of those consequences. If the government fails to make that proof, you must find the defendant not guilty.

Tr. at 174–75 (emphasis added).

■ The foregoing instruction is the same as the one that would have been given if the defendant had rested along with the government, and the case had been submitted to the jury at that time. A jury guided by such an instruction could not have found defendant guilty if its deliberations were based on the evidence that existed when the government rested because the jury could not have found from that evidence that defendant's waivers occurred when he knew and understood all material consequences of his waivers and that he made an intelligent decision to forego his right to counsel and to a jury trial with full knowledge of those consequences. There was no direct evidence that defendant had knowledge that the state court conviction to which his waivers were calculated to lead, and did lead, could result in defendant's loss of his right to possess a firearm, nor was there evidence

from which the jury could infer that defendant had that knowledge.

The concern of the court that caused the court to reserve a ruling on defendant's first Rule 29(a) motion was that, while there was no evidence that defendant was in the firearms business, the jury had been told by defense counsel in his opening statement that they would hear evidence that defendant was an employee and co-owner of a gun business, and that participation in that business had been his only job as an adult. Tr. at 85–86, 120. Moreover, during the voir dire session, the court, when informing the prospective jurors of the nature of the case, included the following in its explanations:

[THE COURT:] Generally speaking, the defendant was in the business of selling firearms, and I'm giving you some background about what the government is claiming. What I say is not something the jury would take into account in deciding the case, but are things that will help you more intelligently answer the questions. And I'm just stating my understanding.

My understanding is that the defendant is and has been in the business of running a gun shop or working in a gun shop and some time a few years back he had an altercation with—I believe the contention is it was his wife, and that resulted in him pleading guilty to the offense of—a domestic violence offense of some kind, and then later each of these counts of the indictment relates to a transaction he engaged in, in the gun shop business at later dates. And he's being accused of violating a federal statute for having engaged in those transactions after having been convicted of that misdemeanor offense related to his wife.

Now, in a general way I believe that describes the nature of the offense charged, and the defendant has pleaded not guilty to each of the counts of the indictment and it's up to the government, if it can, to prove beyond a reasonable doubt the defendant's guilt.

Tr. at 15–16. Shortly thereafter, the following exchange occurred during voir dire:

[THE COURT:] Now, what is the name of the gun shop, Mr. Brown, so I can ask the jury about that?

MR. BROWN: It's Arlington Arms, Your Honor.

THE COURT: Arlington Arms?

MR. BROWN: Yes, sir.

THE COURT: And what is your client's relationship to the gun shop? Is he an employee or—

MR. BROWN: Judge, he's a co-owner.

THE COURT: Okay. Is there anyone on the jury panel who has any knowledge of the defendant, and for your information he's the co-owner and has been employed at a gun shop in Arlington, Texas, called Arlington Arms. Do any of you have any knowledge of the defendant? If so, raise your hands.

*Id.* at 16–17. And, the court posed a question to Judge Adcock that assumed that defendant operated a gun shop. *Supra* at 8. Thus, though there was no evidence when the government rested that defendant operated a gun shop, the case had proceeded to that point on the assumption that he did.

However, upon further consideration, the court has concluded that those mentions by the court and defense counsel of defendant's ownership of, and participation in, a firearms business cannot serve as surrogates for evidence of those facts. The court's instructions to the jury included the following:

[THE COURT:] As I told you earlier, it is your duty to determine the facts. In doing so, you must consider only the evidence presented during the trial, including the sworn testimony of the witnesses and the exhibits.

Remember that any statements, objections, or arguments made by the lawyers are not evidence. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

Also, do not assume from anything I may have said or done during the trial that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

Tr. at 168. If the case had been submitted to the jury when the government rested, the same instructions would have been given, with the result that the jury, if it followed the instructions, could not, and presumably would not, have attached any significance to the remarks of the court and defense counsel concerning defendant's involvement in a firearms business.[6]

For the reasons given above, the court has concluded that the decision it reserved on the Rule 29(a) motion defendant made when the government rested must now be rendered in favor of defendant on the basis of the evidence existing at that time. As a result, the court does not need to discuss the alternative requests for relief made by defendant in his motion for judgment of acquittal.

## V.

## ORDER

Therefore,

The court ORDERS that defendant's motion for judgment of acquittal be, and is hereby, granted; that the jury's verdict of guilty as to each of the eight counts of the indictment filed in this action on April 17, 2002, be, and is hereby, set aside so that each of them is no longer of any force or effect; and, that defendant be, and is hereby, acquitted of the offenses charged against him in the eight-count indictment filed in this case on April 17, 2002.

## JUDGMENT OF ACQUITTAL

The court having granted the motion of defendant, BRETT ALDEN BETHURUM, for judgment of acquittal,

The court ORDERS, ADJUDGES, and DECREES that defendant be, and is hereby, acquitted of all offenses charged against him by the indictment filed in the above-captioned case on April 17, 2002, and that any bond is exonerated.

6. As the Fifth Circuit noted in *United States v. Fletcher*, "[j]uries are presumed to follow the instructions of the court." 121 F.3d 187, 197 (5th Cir.1997).