REVISED DECEMBER 12, 2002

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 01-30888

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ANDERSON S. JACKSON, III; BILLY RAY DEW,

Defendants-Appellants.

Appeal from the United States District Court
For the Western District of Louisiana
November 18, 2002

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

Anderson S. Jackson III and Billy Ray Dew appeal their convictions on eleven counts of conspiracy to violate and violation of 18 U.S.C. § 666, for theft by fraud and bribery. Jackson was director of the Department of Community Affairs (DCA) for the City of Monroe, Louisiana, which operates city golf courses, parks, the museum, civic center, and other recreational venues for the City of Monroe. The jury found that Jackson received kickbacks for awarding construction and repair contracts for the DCA to co-defendant Billy Ray Dew, owner of two construction businesses, and to other contractors as well. Finding insufficient evidence that

the DCA or the City of Monroe received over $10,000 per year in federal funding as required to satisfy a statutory element of the offense, we vacate the judgments of conviction and the sentences and remand for entry of a judgment of acquittal.

I.

One element of the offense of conviction is that the organization, government, or agency of which Jackson was an agent received, in any one year period, over $10,000 in benefits from a Federal program.[1]  Defendants raise a number of issues regarding the alleged federal character of the funds received by the DCA, one of which is a jurisdictional question.

We examine the question of jurisdiction as a threshold matter. To confer subject matter jurisdiction upon a federal court, an indictment need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute.  United States v. Desurra, 865 F.2d 651, 654 (5th Cir. 1989).  The indictment sufficiently invoked the district court's jurisdiction, alleging violations of 18 U.S.C. § 666, including the allegation that the City of Monroe received federal funds in excess of $10,000 for each calendar year at issue.  The district court had jurisdiction over the case because a violation of federal law was

---

[1]  The statute requires that "the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."  18 U.S.C. § 666(b).  The "organization, government, or agency" mentioned in subsection 666(b) denotes the "organization, or . . . local . . . government, or any agency thereof" referred to in subsection 666(a) of which Jackson was an agent.

2

charged, id., regardless of the sufficiency of the Government's proof.

## II.

Defendants contend that the Government failed to prove: that the City received federal benefits in excess of $10,000; that federal funds were present in the accounts from which Jackson made disbursements; or any nexus between the federal funding and the offense conduct.[2]  In a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the verdict, to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  United States v. Greer, 137 F.3d 247, 249 (5th Cir.), cert. denied, 524 U.S. 920, 118 S. Ct. 2305, 141 L. Ed. 2d 164 (1998).

A.  Federal Sources.

We first consider the sufficiency of the Government's evidence that the entity of which Jackson was an agent received over $10,000 per year of federal funds.  The Government offered evidence of funding received by the City of Monroe for the Louisiana Folk Life Festival.  Billy Gene Pearson, Director of Administration for the City, testified that, for the City's fiscal year ended April 30, 1997, the DCA received $12,900 from the National Endowment for the

---

[2] Defendants also argue the lack of a nexus between the offense conduct and the federal funds as a constitutional challenge to § 666 as applied.  We will "not grasp a constitutional question for decision even though properly presented, if there is also present some other legitimate ground upon which the case can be decided." State of Texas v. Grundstrom, 404 F.2d 644, 648 (5th Cir. 1968). We do not reach the constitutional question in this case because, as explained in this part, we find the insufficiency of the evidence dispositive of this appeal.

Humanities (NEH), and, for fiscal year ended April 30, 1998, $10,090 from the same source.

No grant documents in evidence substantiate receipts from the NEH of those amounts, however.[3] Dr. Michael Luster, Director of the Louisiana Folklife Festival, testified that the City received grants from only state and local entities.[4] The documentary evidence substantiated Luster's testimony and demonstrated unequivocally that the $12,900 funding came from the Northeast Louisiana Arts Council (NELAC), and that other grants were from the state or local agencies.[5] No corroboration of any receipt of

---

[3] Pearson testified about his review of City financial records without introducing any documents. 4 R. 16-17. A defense witness, Dr. Michael Luster testified about his review of official audit reports for the City, admitting that the reports show $12,900 labeled "National Endowment for the Arts Folklife Festival . . . revenue recognized and expended" for fiscal year 1997 and "National Endowment for the Humanities pass-through programs" reported as $10,090 for fiscal year 1998. 11 R. 1600-06. (The Government has provided no evidence to clarify the ambiguity about whether those documents reported that the $12,900 was from the National Endowment for the Arts (NEA), as Luster read them, or from NEH, as Pearson testified.) Regardless of how the financial reports are worded, however, as explained below, the record does not contain sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that the City received such funds from either NEA or NEH.

[4] Dr. Luster testified that from 1996 through 1998 the Festival received no federal funding; it received funding from the Louisiana Division of the Arts (DOA), the Louisiana Endowment for the Humanities (LEH), Northeast Louisiana Arts Council (NELAC), the City, the Convention and Visitors' Bureau, and no other public entities. 11 R. 1558-62, 1611.

[5] Documentary evidence supporting Dr. Luster's testimony shows the following funding to the City:
$ 3,800 used from NEH-to-NELAC grant to compensate artists (per Dr. Luster's Final Descriptive Report, ex. D-1334; see also ex. D-1337, showing $3,800 as "endowment payments previously requested" on request for additional advance from NEH-to-NELAC grant);

4

$10,090 is apparent from the documents. Dr. Luster testified that the amount was in error, that $10,000 was the correct amount, and that the grant was from the Louisiana Endowment for the Humanities (LEH) — not NEH.[6] One of defendants' exhibits would suggest such a receipt of $10,000 from LEH in calendar year 1997.[7] The Government concedes that the alleged federal funding was not received by the City directly but by Louisiana agencies for further distribution to local or regional arts projects meeting the criteria established by NEH or the National Endowment for the Arts (NEA).

The record supports an inference that the City received some funding indirectly from those federal sources via local and state agencies.[8] Specifically concerning Pearson's testimony that the

---

$12,900 requested from NELAC endowment of $16,700 from NEH (shown as "endowment now requested" on ex. D-1337);
$ 9,750 Louisiana State Arts Council, Division of the Arts (DOA) grant # FY97155 of July 1996 (ex. D-1339);
$10,000 LEH grant # 96-415-024 dated August 20, 1996 (ex. D-1340);
$10,000 LEH grant # 97-415-074 dated July 8, 1997 (ex. D-1342);
DOA grant # FY98058, amount unspecified (ex. D-1341, August 1997 transmittal letter)
$14,350 DOA grant # FY99053 of July 1998 (ex. D-1343); and
$11,500 LEH grant # 98-415-139 dated July 14, 1998 (ex. D-1344).

[6] 11 R. 1605-07, 1611.

[7] See ex. D-1342 (LEH grant agreement # 97-415-074 of July 8, 1997 providing $10,000 for 1997 Folklife Festival). If the grant was funded in July 1997, the receipt would have been in the City's fiscal year ending in 1998, matching the time frame of the $10,090 receipt Pearson mentioned.

[8] Dr. Luster testified that some of those state and local contributors to the City were themselves grantees of federal funds from NEH and NEA. Dr. Luster also testified that the DOA, which

DCA received $12,900 from NEH, the record contains evidence that this funding, although actually channeled through NELAC, did have federal origins.[9]  Assuming Pearson's testimony about $10,090 of NEH funds corresponds to the 1997 LEH grant agreement for $10,000, we will further assume for purposes of this analysis that the record will support an inference that some of that LEH grant had federal origins as well.[10]

B.  Minimum Per-Year Amounts.

The questions then become *how much* of the grants from local or state agencies were of federal origin, and *when* such funds were received.  The evidence is insufficient if it shows only that the City received *some* federal funds; the statute requires proof that

---

operates under the Lieutenant Governor's Office, is related to NEA, because it receives a portion of its operating expense from NEA. Below the DOA is the local organization, NELAC, a nonprofit organization which also receives grant funding.  11 R. 1564-66; see also ex. D-1340, letter awarding an LEH grant referencing "federal funds"; exs. D-1334, D-1335, and D-1337, showing federal grant to NELAC as resource for the Festival.

[9]  Dr. Luster testified that NELAC received the federal grant, and in turn awarded the City a grant for the same amount, probably the "same dollars."  11 R. 1602.  NELAC got a direct grant from NEA (#94-5533-0159) in the amount of $16,700 (ex. D-1335), of which Dr. Luster succeeded in drawing down a part in 1995 ($3,800) for the 1995 Festival; he then drew down the balance, $12,900, for the 1996 Festival. 11 R. 1570.  See also ex. D-1339 (budget showing $12,900.00 as "NEA FolkArts grant"); ex. D-1334 (Dr. Luster's report, explaining use of $3,800 grant funds awarded to NELAC to defray 1995 Festival expenses).

[10]  LEH grant agreement # 97-415-074 mentions NEH, in a requirement that the grantee recognize in all publicity that the program "is funded under a grant from the Louisiana Endowment for the Humanities, the state affiliate of the National Endowment for the Humanities."  Ex. D-1342.  Even assuming as we do that this proclaimed affiliation provides sufficient evidence to permit an inference of some NEH financial support, it does not suggest how much NEH support was included.

the organization or agency received federal benefits "in excess of $10,000" per year. 18 U.S.C. § 666(b). The one-year period may be any continuous twelve-month period that includes the commission of the offense. 18 U.S.C. § 666(d)(5). This is an exact numeric minimum per year that must be supported by record evidence.

The indictment charged this monetary element for the calendar years 1997 and 1998.[11] The Government in its case in chief attempted to show the requisite receipts with the testimony of Pearson, and argues that a finding of more than $10,000 in federal funds per calendar year is also supported by defendants' exhibits.

1. Pearson's Testimony — Fiscal Years.

Even with the assistance of evidence suggesting an indirect federal receipt in the amount of $12,900, the amount Pearson mentioned, the record does not support a jury finding that the $12,900 receipt occurred in calendar year 1997 or 1998. Pearson's testimony was only that the receipt occurred in the City's fiscal year ending in 1997 — a period that straddles calendar years 1996 and 1997 and does not suggest a specific calendar year. Other evidence does suggest a calendar year, however. Dr. Luster stated that the City received $12,900 *for the 1996 Festival* from NELAC, which funding originated with a NEA grant to NELAC on September 27, 1994. Through Dr. Luster's efforts, NEA's federal grant to NELAC was modified to extend its availability through September 14, 1996,

---

[11] The counts are charged to have occurred over various periods between January 1997 and October 31, 1998.

7

the day of the *1996* Festival.[12]  A NELAC report to NEA shows $12,900 as the "federal share of outlays" during the period from 5/1/95 *to 9/14/96* (ex. D-1338).  This evidence cannot support a jury finding that the $12,900 was received in 1997.

With no evidence to sustain a finding beyond a reasonable doubt that the $12,900 receipt of indirect federal funds occurred in one of the calendar years charged, or that the other receipt Pearson mentioned ($10,090[13]) occurred at all, we cannot sustain the guilty verdict based on Pearson's testimony.  See United States v. Barrera, 547 F.2d 1250, 1255 (5th Cir. 1977) (holding that acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of the essential elements of the crime charged).

2.  Defendants' Exhibits — Calendar Years 1997 and 1998.

The alternative support the Government offers for the verdict is Defendants' evidence.  The City received a total of $10,027 for 1997 via the following checks:

---

[12]  Ex. D-1336; 11 R. 1570; see also ex. D-1334, Dr. Luster's Final Descriptive Report (providing Festival dates).

[13]  Assuming that the $10,090 Pearson mentioned corresponds to the $10,000 LEH grant agreement of 1997, ex. D-1348, and further assuming some NEH financial support for this grant, see supra notes 7 & 10, we still have no evidence whatsoever to suggest how much of such grant comprised federal funds nor evidence demonstrating how much of the grant moneys were received in the calendar years at issue.  (Other evidence reveals that not every payment of grant funds was received in the same calendar year as the grant agreement.  Compare, e.g., 8/20/96 letter awarding grant #96-415-024 (ex. D-1340) with LEH letter of 6/13/97 enclosing final payment for the grant (ex. D-1346)).

8

$7,590 LEH check dated June 13, 1997 (ex. D-1346); and

$2,437 State of Louisiana, Department of Treasury check dated July 17, 1997 (ex. D-1348).

The $7,590 check of June 1997 was part of LEH Grant #96-415-024 in the amount of $10,000 for the Festival.[14] We find sufficient evidence that this payment of $7,590 constituted federal funds, because the LEH letter of August 20, 1996, awarding the grant refers to the award as "This grant of federal funds."  Ex. D-1340. A reasonable jury might have inferred from that phraseology that the entirety of the grant was of federal origin, including every dollar of the $7,590 check received in June 1997.[15]

Our next question is therefore what portion of the $2,437 check of July 1997 was of federal origin.  To show more than $10,000 of federal funding for the calendar year, the Government would have to prove that virtually all of the $2,437 received was of federal origin.[16]  The $2,437 check was part of DOA grant #

---

[14]  An LEH letter of 6/13/97 enclosed the $7,590 "final payment for mini-grant 96-415-024" (ex. D-1346); see also 8/20/96 letter awarding grant (ex. D-1340).

[15]  The City did not receive the remainder of this grant in 1997. See $2,560 LEH check dated 10/28/96 enclosed with a 10/28/96 LEH letter remitting "initial regrant payment" for proposal #96-415-024 for the 1996 Festival (ex. D-1345).
    It is not apparent why the two checks for grant #96-415-024 total $10,150 rather than $10,000.

[16]  To reach a calendar-year total exceeding $10,000, with the benefit of the $7,590 described above, more than $2,410 (99% of the check amount) would be needed from another federal source for that year.  No evidence fills this gap.  (For the reasons discussed supra note 13, the LEH grant dated 1997 provides insufficient evidence to fill that gap.)

9

FY97155.[17]  *Some* underlying federal (NEH) support for DOA grant #

FY97155 is apparent from the evidence, but the evidence suggests

*multiple sources* of support.[18]  Even considering this evidence most

favorably to support the verdict, we find it insufficient to permit

an inference beyond a reasonable doubt of how much of the $2,437

check from the State was of federal origin.  Accordingly, the

evidence is insufficient to bring the total federal funds for 1997

to more than $10,000.

For calendar year 1998, the Government suggests that a total

of $11,500 in federal funds was received by the City from the

following two documents in evidence:

> $2,900 enclosed as "regrant payment" for the 1998
> Festival per August 3, 1998, letter from LEH, re proposal
> #98-415-139 (ex. D-1344); and
>
> $8,600 check of December 21, 1998, from LEH (ex. D-1349).

Both these payments were part of the July 14, 1998, LEH grant #98-

415-139 agreement for $11,500 to the City for the 1998 Festival.[19]

---

[17]  The check references an "Office of Cultural Development Arts Grant," and invoice no. FY97155-2.  Ex. D-1348.  The first payment on this grant was remitted to the City via an 11/13/96 check, and so does not count for the 1997 calendar year.  See 11/13/96 Department of Treasury check for $7,313 referencing invoice no. FY97155-1 (ex. D-1347 ); see also 7/2/96 and 8/2/96 letters explaining and awarding the grant (ex. D-1339).

[18]  The grant agreement for DOA grant # FY97155 requires the "statement 'SUPPORTED BY A GRANT FROM THE [NEA], THE LOUISIANA STATE ARTS COUNCIL, AND THE LOUISIANA [DOA], OFFICE OF CULTURAL DEVELOPMENT, DEPARTMENT OF CULTURE, RECREATION AND TOURISM' [to] . . . appear in close proximity to the name of the grantee organization in ALL [publicity]."  Ex. D-1339.  Additionally, Dr. Luster testified that the DOA receives a portion of its operating expense from NEA and a portion from the State.  11 R. 1565-66.

[19]  See ex. D-1344 (including LEH letter transmitting to Dr. Luster $2,900 as "first installment payment for your 1998 regrant,"

The Government conceded in brief that LEH receives funds from NEH as well as from the State of Louisiana and corporate and individual donors, effectively admitting that a LEH grant contains some federal as well as some non-federal funds.

To suggest that the foregoing receipts satisfy the statute, the Government also argues that the federal organizations retain control over "pass-through funds," either through the grant agreements (such as requiring NEA approval for a regrant to programs around the state) or by statutory provisions requiring accountability or adherence to certain criteria. Assuming without deciding that the level of federal control means that the funds so distributed retained their character as federal funds, we must still find evidence in the record to support a jury finding that over $10,000 per year of such pass-through funds had federal origins.

The Government provides not a single record reference to suggest how much of the $11,500 was of federal origin. Federal control cannot supply the missing element of a certain minimum dollar amount. It is not sufficient that the Louisiana State Arts Council, LEH, or NELAC strives to comply with the requirements of NEH and NEA or federal law. Nor is evidence that LEH is "affiliated with" NEH probative of the extent of financial dependence. We do not have to examine the level of federal "strings attached" to these grants, because no threshold showing

_____

payment request for $8,600 in 1998 out of total $11,500 LEH grant, and LEH grant agreement of July 14, 1998 for $11,500).

has been made that the minimum amount of federal funds was passed through the state agency to the City.

III.

Our extensive review of the record reveals a dearth of evidence to support the essential element that the City received more than $10,000 per year in federal funds. To meet its burden of presenting evidence from which a jury might properly find this element proved beyond a reasonable doubt, the Government must present more than a mere scintilla of evidence; it must produce evidence which, if believed, affords a substantial basis in fact from which the defendant's guilt can be inferred. United States v. James, 510 F.2d 546, 552 (5th Cir.), cert. denied, 423 U.S. 855, 96 S. Ct. 105, 46 L. Ed. 2d 81 (1975). Viewing the evidence in a light most favorable to the Government, we conclude that a reasonably minded jury would necessarily have a reasonable doubt that over $10,000 of federal funding was received by the City in 1997 and 1998 as alleged in the indictment.

Accordingly, we vacate the judgment convicting Jackson and Dew and remand the matter for entry of a judgment of acquittal. VACATED; REMANDED.