# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2026

Lyle W. Cayce
Clerk

———————

No. 24-30730

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MARSHALL GRACE,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CR-80-1

———————————————————

Before JONES, STEWART, and WILLETT, *Circuit Judges*.

CARL E. STEWART, *Circuit Judge*:

This case arises from the jury trial and subsequent conviction of Marshall Grace, a black man. Officers arrested Grace following a traffic stop in New Orleans and recovered approximately 441 grams of methamphetamine from his vehicle. After jury selection began, Grace challenged the Government's peremptory strike of a black juror, citing *Batson v. Kentucky*, 476 U.S. 79 (1986). Because there was sufficient evidence to support Grace's conviction for conspiracy to distribute and possess with intent to distribute at least 500 grams of methamphetamine under 21 U.S.C.

No. 24-30730

§ 846, and Grace cannot show that the prosecution engaged in purposeful discrimination under *Batson*, we AFFIRM.

## I.

In 2020, the Drug Enforcement Administration ("DEA") began surveilling Theodore Tardie, a methamphetamine dealer in Hollygrove, New Orleans. The DEA used electronic surveillance techniques including toll analysis, GPS phone pings, and license plate reader databases. While surveilling Tardie, it found phone numbers linked to Grace and subsequently began monitoring his travel patterns.

On July 29, 2020, police officers stopped Grace's car after witnessing several traffic violations. Officers smelled marijuana emanating from Grace's person, so they mirandized him and proceeded to search his vehicle. Upon doing so, police officers discovered approximately 441 grams of methamphetamine in his trunk. Officers then transported Grace to a local parish jail and interviewed him.

While in custody, Grace gave a written statement admitting ownership of the 441 grams of methamphetamine. He also admitted that he bought eight ounces of methamphetamine every month for two years and that he supplied drugs to Tardie and Jason Lonie, another drug dealer in the area. Officers then searched two of Grace's phones, which detailed several drug transactions between himself, Tardie, and Lonie. On the day of Grace's arrest, Lonie texted to request more drugs to sell.

On June 14, 2024, a grand jury charged Grace in a superseding indictment with conspiracy to distribute and possess with intent to distribute at least 500 grams of methamphetamine under 21 U.S.C. § 846, and possession with intent to distribute at least 50 grams of methamphetamine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On August 12, 2024, jury selection began. There were forty-seven people in Grace's jury venire. Only

No. 24-30730

thirty-one people were potential jurors. Of the thirty-one potential jurors, five were black.[1]

The Government used two of its six peremptory strikes on two black jurors, Edward Davis and Cole White.[2] Grace's counsel challenged the Government's strike of Davis under *Batson v. Kentucky*, 476 U.S. 79 (1986). arguing that the prosecution "struck two of [five] African Americans who were potentially able to sit and, [for Davis], [the Government] hardly had anything to say."[3] The Government countered that, because Davis "had seven sons[,] . . . he would probably not be a great juror for the [G]overnment." The district court explained the following: "[Y]ou're not convincing me that [having seven sons] is a proper reason to strike this African American gentleman when you have an African American defendant." The Government explained that it also struck non-black jurors and that it struck Davis for a "race-neutral reason based on the panel as a whole." Grace's counsel, again, highlighted that the prosecution struck two of the five black jurors, arguing that this was evidence that the Government "unfairly targeted black people." The district court disagreed.

---

[1] Grace's counsel mistakenly recounted that four out of thirty-one potential jurors were black, however, there were five: Juror 1, Juror 8 (Davis), Juror 14 (White), Juror 29, and Juror 32.

[2] While the district court initially denied the Government's for-cause challenge of White as a juror, it did allow the Government to strike White using a peremptory challenge. Notably, Grace only challenges the Government's peremptory strike of Davis as a juror on appeal, not White.

[3] Grace's counsel first said that the prosecution struck "two of three African Americans." Then, he stated that there were four black venirepersons. However, there were five. *See* supra note 1.

The district court then explained that it would question Davis further, stating: "I hear what [the Government is] saying . . . but the fact that he has . . . seven sons . . . I have to look at everything and, you know—I have a problem with that. I'm just telling you." In response, Grace's counsel continued to assert that the prosecution failed to provide an adequate race-neutral reason for striking Davis. Still, the district court proceeded to call Davis and ask him additional questions.[4]

As the district court questioned Davis, he shared that one of his sons served two-and-a-half years in jail and five years of probation for a gun-related charge. Davis stated that he was "not really sure" whether his son was treated fairly, but he said that he would not hold this against the Government. Davis further explained: "Well, to me, you know, only God can judge people. You know, I can't really judge nobody. Only God can judge people." The district court subsequently denied Grace's *Batson* challenge and struck Davis from the jury. It reasoned:

> You know, I can see why—had the [G]overnment known this, now they know it, there would be grounds to . . . exercise a peremptory challenge. That challenge is not based on his race at all, just based on the fact that his son spent over two years in jail without anybody coming forward or anything. So . . . I feel that *Batson* would not be applicable in this case[,] and I will . . . deny [Grace's] [*Batson* challenge] . . . .

In the end, two out of five potential black jurors sat on the jury while one potential black juror was an alternate.

_____

[4] Neither Grace's defense counsel nor the prosecution questioned Davis further.

No. 24-30730

On August 13, 2024, after a two-day trial, the jury found Grace guilty on all counts. On November 12, 2024, the court sentenced Grace to 120 months' imprisonment, the statutory minimum. Grace timely appealed.

## II.

This court has jurisdiction under 28 U.S.C. § 1291.

## III.

### A.

"Preserved challenges to the sufficiency of the evidence get *de novo* review, with a heavy thumb on the scale in favor of the verdict."[5] *United States v. Cabello*, 33 F.4th 281, 288 (5th Cir. 2022) (citing *United States v. Brown*, 727 F.3d 329, 335 (5th Cir. 2013)). Further, this court "must view the evidence and the inferences therefrom in the light most favorable to the jury's verdict and determine whether a rational trier of fact could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Kelley*, 140 F.3d 596, 607 (5th Cir. 1998); *see also Brown*, 727 F.3d at 335.

### B.

To prove that a defendant participated in a drug conspiracy, the Government must show that there was "(1) an agreement between two or more persons to violate narcotics laws; (2) knowledge of the agreement; and (3) voluntar[y] participation in the agreement." *United States v. Suarez*, 879 F.3d 626, 631 (5th Cir. 2018) (citing *United States v. Gallo*, 927 F.2d 815, 820 (5th Cir. 1991)). "No evidence of overt conduct is required. A conspiracy agreement may be tacit, and the trier of fact may infer agreement from

---

[5] Grace preserved this challenge by moving for a judgment of acquittal after the close of the Government's case. *See United States v. Thompson*, 811 F.3d 717, 725 (5th Cir. 2016) (citing *United States v. Harris*, 666 F.3d 905, 907 (5th Cir. 2012)).

circumstantial evidence." *United States v. Preston*, 659 F. App'x 169, 172 (5th Cir. 2016) (quoting *United States v. Thomas*, 12 F.3d 1350, 1356 (5th Cir. 1994)). "An agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from surrounding circumstances." *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2012). Additionally, "[a] 'jury may infer a conspiracy agreement from circumstantial evidence, and may rely upon presence and association, along with other evidence, in finding that a conspiracy existed.'" *United States v. Perez-Solis*, 709 F.3d 453, 461 (5th Cir. 2013) (quoting *United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989)).

## C.

Here, there is sufficient evidence to support Grace's conspiracy conviction.[6] Specifically, there is sufficient record evidence to show that Grace made an agreement with Lonie and Tardie to "violate narcotics laws."[7] *See Suarez*, 879 F.3d at 631. Lonie and Tardie acknowledged having an agreement with Grace to distribute drugs. However, even assuming their testimony is unconvincing, Grace made several admissions regarding his own conduct, including an admission that he regularly supplied Tardie and Lonie with "approximately $600 worth of methamphetamine at a time." And, as the Government notes, there were several texts on Grace's phone from both

---

[6] Grace does not challenge on appeal his conviction for possession with the intent to distribute 50 grams of methamphetamine.

[7] Grace's brief focuses only on whether there was an agreement, not whether Grace knowingly and voluntarily participated. Nonetheless, the facts stated *infra* also show that Grace knowingly and voluntarily participated in the conspiracy with Tardie and Lonie.

Lonie and Tardie, requesting that he supply more methamphetamine to sell, even as Grace was in police custody.

There is also sufficient record evidence to establish that Grace conspired to distribute at least 500 grams of methamphetamine, the quantity required to violate 21 U.S.C. § 846. There were approximately 441 grams of methamphetamine found in his car when he was arrested, which Grace admitted to owning. Grace also told officers that he planned to sell methamphetamine to a woman at Tardie's residence. Additionally, the Government correctly notes that "Grace admitted to law enforcement that he had been purchasing eight ounces (226 grams) of methamphetamine monthly for two years," and there was ample testimony from Lonie to show that Grace frequently supplied approximately 28 grams daily since 2019. Weighing this evidence in the light most favorable to the verdict, *see Kelley*, 140 F.3d at 607, there is ample evidence to show that there was an agreement to distribute at least 500 grams of methamphetamine between Grace, Lonie, and Tardie. Therefore, we hold that there is sufficient evidence to support Grace's conspiracy conviction. *Suarez*, 879 F.3d at 631.

## IV.

## A.

We review *Batson* challenges for clear error. *Foster v. Chatman*, 578 U.S. 488, 500 (2016); *Wright v. Harris Cnty.*, 536 F.3d 436, 438 (5th Cir. 2008). "[W]e will affirm the district court's ruling on a *Batson* challenge unless . . . we are left with the definite and firm conviction that a mistake was committed." *Heckman v. Gonzalez-Caballero*, 65 F.4th 222, 229 (5th Cir. 2023) (citation modified).

No. 24-30730

**B.**

As the Supreme Court has recognized, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89. In *Batson v. Kentucky*, the Supreme Court "ended the widespread practice in which prosecutors could (and often would) routinely strike all black prospective jurors in cases involving black defendants." *Flowers v. Mississippi*, 588 U.S. 284, 301 (2019). It also established a "three-step process" to evaluate *Batson* challenges. *Davis v. Ayala*, 576 U.S. 257, 270 (2015).

"First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race." *Foster*, 578 U.S. at 499 (quoting *Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008)). Second, after a defendant makes a prima facie case of discrimination under *Batson*, "the State must provide race-neutral reasons for its peremptory strikes." *Flowers*, 588 U.S. at 298. Lastly, the district court "must determine whether the prosecutor's stated reasons were the actual reasons or instead were a pretext for discrimination." *Id.* "The opponent of the strike bears the burden of persuasion regarding racial motivation." *Ayala*, 576 U.S. at 271 (citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam)).

"The Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Flowers*, 588 U.S. at 303 (citation omitted). Because "[s]ome stated [race-neutral] reasons are false, . . . . a defendant may rely on 'all relevant circumstances' to raise an inference of purposeful discrimination." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citation omitted). Importantly, "a trial court['s] finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is entitled

8

to 'great deference.'" *Ayala*, 576 U.S. at 271 (quotation mark omitted) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam)). "[T]rial judges possess the primary responsibility to enforce *Batson* and prevent racial discrimination from seeping into the jury selection process." *Flowers*, 588 U.S. at 302.

## C.

On appeal, Grace primarily argues that the district court erred in denying his *Batson* challenge because "the Government failed to provide a non-pretextual, 'race-neutral' explanation." Grace secondarily argues that the district court erred when it asked Davis additional questions, "supplying its own justification for the Government's peremptory strike rather than evaluating the reason actually given by the Government." Although Grace asserts that the district court impermissibly supplied its own reason to uphold striking Davis, he maintains that the district court's error in denying his *Batson* challenge is rooted in the Government's failure to supply a non-pretextual race-neutral reason. And Grace *does not* claim that the Government relied on the district court's *sua sponte* questioning of Davis. Indeed, he concedes that the Government distanced itself from any additional information that was provided, remarking that "the Government did not change its race-neutral explanation following the additional questions."

We take this opportunity to emphasize that the district court strayed from Supreme Court and Fifth Circuit precedent. Specifically, it erroneously elicited additional testimony from Davis in derogation of settled law. The Supreme Court has held that "*the prosecutor* must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challeng[e]." *Miller-El*, 545 U.S. at 239 (emphasis added) (citation omitted). Likewise, this circuit has held that "the *Batson* framework . . . requires a focus on the actual,

contemporary reasons articulated for the *prosecutor's* decision to strike a prospective juror." *Chamberlin v. Fisher*, 885 F.3d 832, 841 (5th Cir. 2018) (en banc) (emphasis added). The district court must then "determine whether the prosecutor's proffered reasons are the actual reasons, or whether the proffered reasons are pretextual and the prosecutor instead exercised peremptory strikes on the basis of race." *Flowers*, 588 U.S. at 303; *see also Miller-El*, 545 U.S. at 251–52 ("[T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it *requires* the *judge* to assess the plausibility of that reason in light of all evidence with a bearing on it." (emphasis added) (citations omitted)); *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) ("[T]he issue comes down to whether the *trial court* finds the prosecutor's race-neutral explanations to be credible." (emphasis added)). Here, the district court supplanted this burden by questioning Davis *sua sponte*, in an erroneous attempt to find a race-neutral reason on the Government's behalf. *Cf. Miller-El*, 545 U.S. at 252 ("[A] prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.").

Nevertheless, the district court correctly denied Grace's *Batson* challenge.[8] Although the district court should not have questioned Davis

---

[8] Our analysis centers around step three, that is, whether the prosecution's race-neutral explanation was pretext for racial discrimination. At step one, neither party disputes, and the Supreme Court has made clear, that once a race-neutral reason is given, the question of whether the defendant made a prima facie showing is moot. *See Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality opinion) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."); *see also United States v. Brown*, 553 F.3d 768, 796 (5th Cir. 2008). At step two, the Government's race-neutral reason need only be that—race neutral. It need not be "persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam). The Government's proffered reason here clearly suffices. Thus, our analysis focuses on step three.

No. 24-30730

further, Grace held the burden of showing racial discrimination at step three. *See United States v. Thompson*, 735 F.3d 291, 296 (5th Cir. 2013) (explaining that the defendant has the "burden of proving purposeful discrimination"); *Elem*, 514 U.S. at 768. Grace failed to meet that burden. Here, there were only five black jurors to choose from. Even after striking Davis and White, two black jurors were empaneled on the jury with one black juror as an alternate. This negates Grace's argument that the low percentage of empaneled black jurors indicated racial discrimination. While Grace claimed that the prosecutor "unfairly targeted black [venirepersons]," the district court recognized that having two black jurors, and one black alternate juror, undermined Grace's claim that the Government had a "system . . . to violate *Batson*." Additionally, Grace cannot show that the prosecutor's race-neutral reason of his "having seven sons," on its face, "is clearly pretextual." Therefore, because Grace has failed to show purposeful discrimination, we hold that the district court did not err when it denied Grace's *Batson* challenge.

## V.

For the foregoing reasons, we AFFIRM the district court's judgment in full.

11